UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LANDMARK AMERICAN INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., a Delaware corporation; YELLOW GROUP LLC; YELLOW CAB AFFILIATION; INC.; TAXI AFFILIATION SERVICES LLC; YC1 LLC; 5 STAR FLASH, INC.; CHICAGO MEDALLION ONE LLC; and YOUR PRIVATE LIMOUSINE, INC. <br><br> Defendants. | Case No.: 13-CV-2109 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES Plaintiff LANDMARK AMERICAN INSURANCE COMPANY ("Landmark") by and through its attorneys TRAUB LIEBERMAN STRAUS & SHREWSBERRY, LLP, and for its Complaint for Declaratory Judgment against Defendants UBER TECHNOLOGIES, INC. ("Uber"); YELLOW GROUP LLC; YELLOW CAB AFFILIATION, INC.; TAXI AFFILIATION SERVICES LLC; YC1 LLC; 5 STAR FLASH, INC.; CHICAGO MEDALLION ONE LLC; and YOUR PRIVATE LIMOUSINE, INC., states as follows:

**Nature of Action**

1. Plaintiff Landmark is an insurance company and issued two claims-made professional liability policies of insurance to Defendant Uber. Landmark brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, *et seq.* and Rule 57 of the Federal

Rules of Civil Procedure seeking a declaration with respect to its duty to defend and indemnify Uber under the subject policies for a lawsuit styled *Yellow Group LLC, et al. v. Uber Technologies, Inc.*, Case No. 12-cv-7967, filed in the U.S. District Court for the Northern District of Illinois on October 4, 2012. A First Amended Complaint was filed on December 20, 2012 (the "Yellow Group lawsuit"). Landmark seeks a declaration that no coverage is available under the subject Landmark Policies and that Landmark has no obligation to defend or indemnify Uber in connection with the Yellow Group lawsuit.

2. There exists an actual and justiciable controversy among the parties concerning their respective rights, duties, and obligations under and pursuant to the Landmark Policies. Landmark contends that there is no obligation to defend or indemnify Uber in connection with the claims asserted in the underlying Yellow Group lawsuit based on the terms of the Landmark Policies and applicable law.

3. Landmark has no adequate remedy at law and, therefore, desires a judicial determination of its rights and duties in accordance with the Landmark Policies. A judicial declaration is necessary and appropriate at this time so that Landmark may ascertain its rights and duties with respect to defense and indemnity under the Landmark Policies for the underlying Yellow Group lawsuit.

4. Jurisdiction over this matter is appropriate pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

5. Venue is appropriate in this district pursuant to 28. U.S.C. § 1391(b), in that all Defendants reside in this district and a substantial part of the events giving rise to this claim occurred in this district.

**The Parties**

6. Landmark American Insurance Company is an Oklahoma corporation engaged in the insurance business with its principal place of business in Atlanta, Georgia.

7. Defendant Uber Technologies, Inc., is a Delaware corporation with its principal place of business at 800 Market Street, San Francisco, California. Uber also maintains a registered office and registered agent in Chicago, Illinois, and does business in and around Chicago, Illinois.

8. On information and belief, Defendant Yellow Group, LLC, is a Delaware limited liability company with its principal place of business at 2230 S. Michigan Avenue, Chicago, Illinois, and whose members are People Mover, Inc., and Yellow Cab Partners, LLC. People Mover, Inc., is a Delaware corporation with its principal place of business at 39 W. 13th Street, 3rd Floor, New York, NY 10011. Yellow Cab Partners, LLC, is a Delaware limited liability company whose members are Patton Corrigan and Lauren Corrigan. On information and belief Patton and Lauren Corrigan are citizens of Greenwich, Connecticut.

9. On information and belief, Defendant Yellow Cab Affiliation Inc., is an Illinois corporation with its principal place of business at 2231 S. Wabash Avenue, Chicago, Illinois.

10. On information and belief, Defendant Taxi Affiliation Services, LLC, is a Delaware limited liability company with its principal place of business at 2230 S. Michigan Avenue, Chicago, Illinois, and whose sole member is Yellow Group LLC.

11. On information and belief, Defendant YC1 LLC, is a Delaware limited liability company with its principal place of business at 2230 S. Michigan Avenue, Chicago, Illinois, and whose sole member is Yellow Medallion Holdings LLC. Yellow Medallion Holdings LLC, is a Delaware limited liability company whose members are Eatery Taxi Corp. and Yellow Cab

Partners LLC. On information and belief, Eatery Taxi Corp. is a New York corporation with its principal place of business at Long Island City, New York. Yellow Cab Partners, LLC, is a Delaware limited liability company whose members are Patton Corrigan and Lauren Corrigan. On information and belief, Patton and Lauren Corrigan are citizens of Greenwich, Connecticut.

12. On information and belief, Defendant 5 Star Flash, Inc., is an Illinois corporation with its principal place of business at 5200 N. Otto Avenue, Chicago, Illinois.

13. On information and belief, Defendant Chicago Medallion One, LLC, is an Illinois limited liability company, with its principal place of business at 9696 W. Foster Ave., Chicago, Illinois, and whose members are Henry Elizar and Rita Elizar. Henry and Rita Elizar are citizens of Chicago, Illinois.

14. On information and belief, Defendant Your Private Limousine, Inc., is an Illinois corporation with its principal place of business at 355 W. Dundee Road, Ste. 213, Buffalo Grove, Illinois.

15. Defendants Yellow Group, LLC; Yellow Cab Affiliation, Inc.; Taxi Affiliation Services, LLC; YC1 LLC; 5 Star Flash, Inc.; Chicago Medallion One, LLC; and Your Private Limousines, Inc. (collectively, the "Taxi Companies"), are plaintiffs in the underlying Yellow Group lawsuit and are joined herein as necessary parties and so that they may be bound by the judgment entered in this case. The Taxi Companies are necessary parties to this action pursuant to Rule 19 of the Federal Rules of Civil Procedure. If Defendant Taxi Companies execute a stipulation agreeing to be bound by any judgment entered herein, Landmark will voluntarily dismiss Taxi Companies from this action.

### The Underlying Yellow Group Lawsuit

16. On October 4, 2012, a lawsuit styled *Yellow Group, LLC, et al. v. Uber Technologies Inc.*, cause no. 12-cv-7967, was brought against Uber in the U.S. District Court for the Northern District of Illinois. A First Amended Complaint was filed on December 20, 2012 (the "Yellow Group lawsuit"). The underlying plaintiffs, Defendant Taxi Companies herein, represent various taxi cab and livery services companies, "Taxi Affiliations" and their members, and licensed taxi cab medallion owners in the City of Chicago. A copy of the First Amended Complaint filed in the Yellow Group lawsuit is attached hereto as **Exhibit A**.

17. The original Yellow Group lawsuit was served on Uber on October 5, 2012.

18. According to the Yellow Group lawsuit, Uber acts and holds itself out as a transportation company whose business model revolves around a mobile phone app that allows consumers to request service from taxis or livery ("black car") vehicles. Uber's business model requires Uber to contract directly with the drivers of Taxi Companies' vehicles without the knowledge or consent of Taxi Companies.

19. The Yellow Group lawsuit avers that Uber's marketing touts their "Uber fleet," "Uber rides," "fleet partners" and similar designations which mislead consumers into believing that Uber provides the car and the driver or is affiliated with the Taxi Companies. When a taxi driver responds to an Uber request, consumers see the Taxi Companies' trademarks and trade dress on the taxi which falsely implies that Uber is associated with, sponsored, or approved by the Taxi Companies. Uber's unlawful business operations allegedly inject uncertainty and confusion into the market as to the source of transportation services by dispatching vehicles under Taxi Companies' colors and trademarks.

20. According to the Defendant Taxi Companies, Uber unfairly competes with the Taxi Companies by failing to comply with ordinances, rules, and regulations governing taxi and livery services in the City of Chicago.

21. Uber allegedly expressly violates the City code and ordinances by, among other things, dispatching livery vehicles and taxicabs under the same system and using illegal metering devices.

22. Moreover, the Yellow Group lawsuit alleges that Uber's advertised 20% "gratuity," which does not go entirely to the driver but includes a 10% payment to Uber, actually increases the metered fare and violates City ordinances governing taxi rates and credit-card processing fees. Uber's practices also allegedly prevent Taxi Companies from complying with Chicago data-collection mandates and illegally discriminate against people without credit cards and smart-phones and prevents taxis from servicing under-served areas.

23. The Yellow Group lawsuit also alleges that Uber tortiously interferes with the contractual relationship between the Taxi Companies and their drivers by contracting with drivers for services that violate the laws of the State of Illinois and City of Chicago. Uber's business practices allegedly encourage drivers to violate City of Chicago rules and regulations and their agreements with Taxi Companies including rules meant to ensure non-discriminatory taxi service and dispatching, credit card processing and mandated data collection ordinances, and the illegal use of mobile devices while operating a taxi. Furthermore, Uber's practices allegedly interfere with and induce individual taxi drivers to breach the limited terms of use of the Taxi Companies' trademarks and trade dress by associating Taxi Companies' trademarks and trade dress with Uber.

24. The Yellow Group lawsuit alleges six causes of action sounding in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Counts I and II); violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 et seq. (Count III); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (Count IV); Tortious Interference with Contractual Relations (Count V); and common law unfair competition (Count VI). The Yellow Group lawsuit seeks "compensatory damages," an accounting of Uber's profits, treble/statutory damages, punitive damages, attorneys' fees and costs, and injunctive relief.

### The Landmark Policies

25. Landmark issued two claims-made professional liability policies providing Cyber, Technology, Professional Services and Network Security Coverage, policy numbers LCY816794 and LCY819510, to Uber, effective August 5, 2011, to October 5, 2012, and October 5, 2012, to October 5, 2013, respectively (collectively, the "Landmark Policies"). The Landmark Policies include six (6) separate coverage parts, identified as Insuring Agreements A – F. These Insuring Agreements provide the following coverage: **(A) Professional and Technology Services Errors and Omissions Liability, (B) Media Activities Liability, (C) Network Security and Privacy Liability, (D) Privacy Breach Coverage, (E) Data Assets Breach, and (F) Cyber Extortion Threat.**

26. The 2011-2012 Landmark Policy provides limits of $2,000,000 per "Claim" for Professional and Technology Services Errors & Omissions Liability, Media Activities Liability, and Network Security & Privacy Liability and $2,000,000 in the aggregate. Coverage parts D (Privacy Breach), E (Data Assets Breach), and F (Cyber Extortion Threat) include limits of $500,000 per "Event." The 2011-2012 Landmark Policy is attached hereto as **Exhibit B**.

27. The 2012-2013 Landmark Policy provides limits of $3,000,000 per "Claim" for Professional and Technology Services Errors & Omissions Liability, Media Activities Liability, and Network Security & Privacy Liability and $3,000,000 in the aggregate. Coverage parts D (Privacy Breach), E (Data Assets Breach), and F (Cyber Extortion Threat) include limits of $500,000 per "Event." The 2012-2013 Landmark Policy is attached hereto as **Exhibit C**.

28. The Declarations of the 2011-2012 Landmark Policy, Item 5., contains a Retroactive Date of August 5, 2011.

29. The Declarations of the 2012-2013 Landmark Policy, Item 5., contains a Retroactive Date of September 5, 2012. The 2012-2013 Landmark Policy, however, also includes an Endorsement No. 12 ("Retroactive Date Amendatory Endorsement") that provides for Limits of Insurance of $2MM/$2MM with a "Retroactive Date" of August 5, 2011, for Insuring Agreements A-C.

30. Part I (Insuring Agreements), Coverage A (Professional and Technology Services Error and Omissions Liability Coverage) of the Landmark Policies provides as follows:

> If Insuring Agreement A, Professional and Technology Services Errors and Omissions Liability Coverage is purchased, the Company will pay on behalf of the **Insured** all **Damages** and associated **Claim Expenses** that the **Insured** becomes legally obligated to pay, in excess of the applicable Deductible and within the applicable Limit of Insurance, incurred as a direct result of a covered **Claim** alleging a:
>
> 1. **Professional Services Error** or
>
> 2. **Technology Services Error**
>
> That was first committed on or after the **Retroactive Date** and before the expiration of the **Policy Period**; provided that the **Claim** is first made against the **Insured** during the **Policy Period** or the applicable Extended Reporting Period and the Claim is reported to the Company in conformity with Condition A. of this Policy.

8

31. The Landmark Policies define "Professional Services Error" in relevant part as follows:

> **Professional Services Error** means any negligent act, error or omission or series of negligent acts, errors or omissions actually or allegedly committed by any **Insured** in their capacity as such, in the rendering of or failure to render **Professional Services**. **Professional Services Error** does not include **Technology Services Errors, Media Activities Errors, Network Security Errors, Privacy Errors, Privacy Breaches, Data Assets Breaches, Cyber Extortion Threats**, any other **Error**, or any **Events**.

32. The Landmark Policies define "Professional Services" as follows:

> **Professional Services** means only those professional services specified in Item 1. of the Declarations and performed for a fee for clients of the **Named Insured** by an **Insured**, or by any person or entity acting on behalf of the **Named Insured**.

33. The corresponding Item 1 of the Declarations describes Uber's "professional services" as "N/A."

34. The Landmark Policies define "Technology Services Error" in relevant part as follows:

> **Technology Services Error** means any negligent act, error or omission or series of negligent acts, errors or omissions actually or allegedly committed by any **Insured** in their capacity as such, in the **Insured's** rendering of or failure to render **Technology Services** to clients of the **Named Insured** for a fee or the resulting failure of the **Named Insured's Technology Products** to properly perform the function or properly serve the purpose intended for clients of the **Named Insured**. **Technology Services Error** does not include **Professional Services Errors, Media Activities Errors, Network Security Errors, Privacy Errors, Privacy Breaches, Data Assets Breaches, Cyber Extortion Threats**, any other **Error**, or any **Events**.

35. The term "Technology Services" is defined in relevant part as follows:

> **Technology Services** means:
>
> 1. Computer services consisting of: data auditing, conversion, encryption, mining, processing and testing; software design,

    development, distribution, implementation, installation, integration, leasing, licensing, maintenance and support; consulting or training on computer networks or systems;

2.  Telecommunications services consisting of: consulting, design, development, or training on telecommunications systems including wireless networks, cloud computing, voice over internet protocol (VOIP) or webchat;

3.  Internet services consisting of: website, application service provider (ASP), and internet service provider (ISP) design, development and hosting including electronic or digital media created or controlled and disseminated by or on behalf of the **Named Insured** for others for a few; and/or

4.  Those services specified in Item 1. of the Declarations.

36.  The corresponding Item 1. of the Declarations describes Uber's "Technology Services" as:

> SOFTWARE DEVELOPMENT FOR SMART PHONE APPLICATION AND ALL SERVICES DISSEMINATED VIA www.uber.com.

37.  Part I (Insuring Agreements), Coverage B (Media Activities Liability Coverage) includes the following insuring agreement:

> If Insuring Agreement B, **Media Activities** Liability Coverage, is purchased, the Company will pay on behalf of the Insured all **Damages** and associated **Claim Expenses** that the **Insured** becomes legally obligated to pay, in excess of the applicable Deductible and within the applicable Limit of Insurance, incurred as a direct result of a covered **Claim** alleging a **Media Activities Error** that was first committed on or after the **Retroactive Date** and before the expiration of the **Policy Period**; provided that the **Claim** is first made against the **Insured** during the **Policy Period** or the applicable Extended Reporting Period and the **Claim** is reported to the Company in conformity with Condition A. of this Policy.

38.  The policy defines "Media Activities Error" as follows:

> **Media Activities Error** means in the course of the provision of **Professional Services** or **Technology Services** and as a direct result of any **Media Activities**, the alleged commission by or on behalf of the **Named Insured** of any of the following offenses:

10

    1.     any **Personal Injury** offense;

    2.     product disparagement; trade libel; defamation or harm to the reputation of any entity;

    3.     intellectual property infringement (but not any patent infringement or trade secret misappropriation) including infringement or dilution of copyright, trademark, trade name, trade dress, service mark, or service name, publicity rights violations; cyber-squatting violations; plagiarism; or misappropriation or piracy of ideas; or

    4.     domain name infringement or improper deep linking or framing.

39.     The Landmark Policy defines "Media Activities" as follows:

**Media Activities** means the gathering, production, dissemination, publishing, broadcasting, webcasting or other distribution to the general public, by or on behalf of the **Named Insured**, for itself or others for a fee, of any **Media Content.**

40.     The Landmark Policy further defines "Media Content" as follows:

**Media Content** means the data, words, text, numbers, sounds, images, graphics or similar communicative matter disseminated electronically on the **Named Insured's Website** or in **Advertising**. **Media Content** may also include any other communicative matter identified as such in Item 1. of the Declarations. **Media Content** shall not include:

    1.     the **Named insured's Technology Products**;

    2.     the actual products, goods, services or business the **Media Content**, including **Advertising**, otherwise describes, illustrates, markets or portrays;

    3.     any dissemination of the data, words, text, numbers, sounds, images, graphics or similar matter incorporated into or otherwise a part of any **Technology Products**, software, firmware, applications, code, script or program.

41.     The Landmark Policies define "Claim" as follows:

**Claim** means any written demand for money, services, non-monetary relief or injunctive relief received by an **Insured**, including service of suit or the institution or arbitration proceedings against an **Insured**, even if any

of the allegations of the **Claim** are groundless, false or fraudulent. Solely for the purposes of Insuring Agreement C, **Claim** also means a **Regulatory Claim**. **Claim** does not mean or include any **Event**.

42. The policies define "Error" as follows:

**Error** means a **Professional Services Error, Technology Services Error, Media Activities Error, Network Security Error, Privacy Error,** and/or any endorsed Insuring Agreement incorporating "Error" within its terms, as the context may indicate.

43. The policies define "Damages" as follows:

**Damages** means monetary judgment, award or settlement, including punitive or exemplary damage (if insurable under the applicable law most favorable to the insurability of punitive or exemplary damage), which an **Insured** is legally obligated to pay as a direct result of a covered **Claim** to which this Policy applies. **Damages** shall not include:

1. any amounts the **Insured** is not legally liable or financially obligated to pay;

2. any awards or damages assessed that are a multiple of compensatory damages; any fines, taxes or loss of tax benefits; sanctions or penalties, except any regulatory fine or penalty assessed as a direct result of an otherwise covered **Regulatory Claim**;

3. any non-monetary award, specific performance award or equitable relief of any kind issued by any jurisdictional government authority against any Insured or any costs of or fees incurred in complying with orders granting such relief;

4. any amounts for any matter that is uninsurable by applicable law;

5. discounts, prizes, coupons, awards, redemptions or other incentives;

6. future profits, restitution, royalty, disgorgement of any unjust enrichment, financial advantage or profit by an **Insured** to which an **Insured** was not legally entitled;

7. the offset of or return of fees, charges, commissions or earnings for goods or services provided or agreed to be provided;

8. liquidated damages pursuant to a contact, unless, even in the absence of that contract, the **Named Insured** would have been liable for such damages as a direct result of an otherwise covered **Claim**; however, damages shall only be payable hereunder tot eh extent that such damages exceed the amount of such liquidated damages agreement;

9. any profits foregone, or costs incurred, for the recall, correction or reperformance of any services, products or goods of any kind of the **Insured**, including but not limited to any **Media Activities** and any **Technology Products**;

10. any profit, fee, royalty, charge, cost, or expense of any kind incurred to obtain the rights to or license to promote or use any goods, data, information, depiction, service or product of any kind, including but not limited to any **Media Activities**;

11. any amounts other than those that compensate solely for a **Claim** caused by a covered **Error**; or

12. any amounts attributable to any **Event**, as defined herein, regardless of whether or not it is covered.

44. The Landmark Policies contain an exclusion J. which provides as follows:

The coverage under this Policy does not apply to any **Event, Claim, Regulatory Claim, Damages, Error**…or **Claim Expenses** based upon, alleging, or arising out of:

\* \* \*

J. False, misleading, unfair or deceptive trade practices allegations, fraudulent or misrepresenting statements in any **Advertising**, or in any promotion or sale of an **Insured's** own products or services, or any unfair competition allegations arising out of the foregoing.

45. The Landmark Policies also includes an exclusion K. that provides as follows:

The coverage under this Policy does not apply to any **Event, Claim, Regulatory Claim, Damages, Error**…or **Claim Expenses** based upon, alleging, or arising out of:

\* \* \*

K. The validity, invalidity, infringement, violation or misappropriation of any copyright, service mark, service name, trademark, trade name or other intellectual property rights of any third party. However, this exclusion shall not apply solely with

respect to an offense specifically enumerated in the Definition of Media Activities Error and which is otherwise expressly covered under Insuring Agreement B.

46. The Landmark Policies also include an exclusion L. that provides as follows:

The coverage under this Policy does not apply to any **Event, Claim, Regulatory Claim, Damages, Error**…or **Claim Expenses** based upon, alleging, or arising out of:

\* \* \*

L. False, deceptive or unfair business practices or any violation of consumer protection laws. However, this exclusion shall not apply solely with respect to an **Error** expressly covered under Insuring Agreement C as a direct result of a **Regulatory Claim** solely for a violation of **Privacy Regulations**.

47. The Landmark Policies also include an exclusion V. that provides as follows:

The coverage under this Policy does not apply to any **Event, Claim, Regulatory Claim, Damages, Error**…or **Claim Expenses** based upon, alleging, or arising out of:

\* \* \*

V. Any actual or alleged inaccurate, inadequate, or incomplete description of or disclosure of the price of goods, products or services; or any estimate, representation, warranty or guarantee that is actually or allegedly exceeded with respect to any fee, expense, cost, or price of any goods, products or services.

48. The Landmark Policies also include an exclusion Y. that provides in relevant part:

The coverage under this Policy does not apply to any **Event, Claim, Regulatory Claim, Damages, Error**…or **Claim Expenses** based upon, alleging, or arising out of:

\* \* \*

Y. Any disputes over any fees, expenses, costs, deposits, commissions or charges for goods, products, or services.

49. The Landmark Policies also include an exclusion A. that provides in relevant part:

The coverage under this Policy does not apply to any **Event, Claim, Regulatory Claim, Damages, Error**…or **Claim Expenses** based upon, alleging, or arising out of:

A. 1. Any dishonest, fraudulent, malicious, or intentional act, error or omission, or any intentional or knowing violation of the law, including any law governing Protected Data, committed by, in collusion with, with the consent of or at the direction of the Insured; or

2. The gaining in fact of any profit, remuneration or financial advantage to which any Insured is not legally entitled; or

\* \* \*

However, these exclusions shall not apply to Claim Expenses or the Company duty to defend any such Claim otherwise potentially covered under a purchased Insuring Agreement until there is a final adjudication against the Insured, including but not limited to a judgment against, binding arbitration against, adverse admission by, finding of fact against or plea of no contest by the Insured, at which time the Insured and/or Named Insured shall reimburse the Company for any and all Claim Expenses paid by the Company.

\* \* \*

## COUNT I – DECLARATORY JUDGMENT
### (2011-2012 Landmark Policy)

50. Plaintiff incorporates and re-alleges the preceding paragraphs 1-49 as if fully restated and set forth herein as paragraph 50.

51. Plaintiff does not owe a duty to defend or indemnify Uber in the Yellow Group lawsuit under the 2011-2012 Landmark Policy for the following reasons:

A. The Yellow Group complaint was served on Uber on October 5, 2012, within the 2012-2013 Landmark Policy Period and after the expiration of the 2011-2012 policy period, and therefore, the "Claim" was first made during the 2012-2013 policy period. Consequently, the allegations of the Yellow Group lawsuit fail to satisfy the Insuring Agreement of the 2011-2012 Landmark Policy and there is no coverage afforded under the 2011-2012 Landmark Policy for this "Claim."

B. The Landmark Policies do not afford coverage for a "Professional Services Error" as defined in the policies, and therefore, Insuring Agreement A. of the Landmark Policies is not satisfied.

15

C. The Yellow Group lawsuit fails to allege a "Technology Services Error" as defined by the policies, and therefore, Insuring Agreement A. of the Landmark Policies is not satisfied.

D. The Yellow Group lawsuit fails to allege a "Media Activities Error" as defined by the policies, and therefore, Insuring Agreement B. of the Landmark Policies is not satisfied.

E. The Yellow Group lawsuit fails to allege a "Network Security Error" or "Privacy Error" as defined by the Landmark Policies, and therefore, Insuring Agreement C. of the Landmark Policies is not satisfied.

F. The Yellow Group lawsuit fails to allege a "Privacy Breach" as defined by the Landmark Policies, and therefore, Insuring Agreement D. of the Landmark Policies is not satisfied.

G. The Yellow Group lawsuit fails to allege a "Data Assets Breach" as defined by the Landmark Policies, and therefore, Insuring Agreement E. of the Landmark Policies is not satisfied.

H. The Yellow Group lawsuit fails to allege a "Cyber Extortion Threat" as defined by the Landmark Policies, and therefore, Insuring Agreement F. of the Landmark Policies is not satisfied.

I. Even if the Yellow Group lawsuit alleges an "Error," which it does not, the relief sought in the Yellow Group lawsuit fails to allege "Damages" as defined by the policies, and therefore, Insuring Agreement A. and B. of the Landmark Policies is not satisfied.

J. Even if the Yellow Group lawsuit satisfies any of the Insuring Agreements of the Landmark Policies, which it does not, exclusion J. bars coverage.

K. Even if the Yellow Group lawsuit satisfies any of the Insuring Agreements of the Landmark Policies, which it does not, exclusion K. bars coverage.

L. Even if the Yellow Group lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion L. bars coverage.

M. Even if the Yellow Group lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion V. bars coverage.

N. Even if the Yellow Group lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion Y. bars coverage.

O. Even if the Yellow Group lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion A. bars coverage.

**WHEREFORE**, Plaintiff LANDMARK AMERICAN INSURANCE COMPANY prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the 2011-2012 Landmark Policy, together with the following relief:

a. That this Court find and declare that Landmark has no duty to defend Uber Technologies, Inc., under the 2011-2012 Landmark Policy in the underlying Yellow Group lawsuit;

b. That this Court find and declare that Landmark has no duty to indemnify Uber Technologies, Inc., under the 2011-2012 Landmark Policy in the underlying Yellow Group lawsuit;

c. That this Court grant such other and further relief as it deems just and equitable.

## COUNT II – DECLARATORY JUDGMENT
### (2012-2013 Landmark Policy)

52. Plaintiff incorporates and re-alleges the preceding paragraphs 1-51 as if fully restated and set forth herein as paragraph 52.

53. Plaintiff does not owe a duty to defend or indemnify Uber in the Yellow Group lawsuit under the 2012-2013 Landmark Policy for the following reasons:

A. The Landmark Policies do not afford coverage for a "Professional Services Error" as defined in the policies, and therefore, Insuring Agreement A. of the Landmark Policies is not satisfied.

B. The Yellow Group lawsuit fails to allege a "Technology Services Error" as defined by the policies, and therefore, Insuring Agreement A. of the Landmark Policies is not satisfied.

C. The Yellow Group lawsuit fails to allege a "Media Activities Error" as defined by the policies, and therefore, Insuring Agreement B. of the Landmark Policies is not satisfied.

D.     The Yellow Group lawsuit fails to allege a "Network Security Error" or "Privacy Error" as defined by the Landmark Policies, and therefore, Insuring Agreement C. of the Landmark Policies is not satisfied.

E.     The Yellow Group lawsuit fails to allege a "Privacy Breach" as defined by the Landmark Policies, and therefore, Insuring Agreement D. of the Landmark Policies is not satisfied.

F.     The Yellow Group lawsuit fails to allege a "Data Assets Breach" as defined by the Landmark Policies, and therefore, Insuring Agreement E. of the Landmark Policies is not satisfied.

G.     The Yellow Group lawsuit fails to allege a "Cyber Extortion Threat" as defined by the Landmark Policies, and therefore, Insuring Agreement F. of the Landmark Policies is not satisfied.

H.     Even if the Yellow Group lawsuit alleges an "Error," which it does not, the relief sought in the Yellow Group lawsuit fails to allege "Damages" as defined by the policies, and therefore, Insuring Agreement A. and B. of the Landmark Policies is not satisfied.

I.     Even if the Yellow Group lawsuit satisfies any of the Insuring Agreements of the Landmark Policies, which it does not, exclusion J. bars coverage.

J.     Even if the Yellow Group lawsuit satisfies any of the Insuring Agreements of the Landmark Policies, which it does not, exclusion K. bars coverage.

K.     Even if the Yellow Group lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion L. bars coverage.

L.     Even if the Yellow Group lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion V. bars coverage.

M.     Even if the Yellow Group lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion Y. bars coverage.

N.     Even if the Yellow Group lawsuit satisfies any of the Insuring Agreements of the Landmark Policy, which it does not, exclusion A. bars coverage.

**WHEREFORE**, Plaintiff LANDMARK AMERICAN INSURANCE COMPANY prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the 2012-2013Landmark Policy, together with the following relief:

a. That this Court find and declare that Landmark has no duty to defend Uber Technologies, Inc., under the 2012-2013 Landmark Policy in the underlying Yellow Group lawsuit;

b. That this Court find and declare that Landmark has no duty to indemnify Uber Technologies, Inc., under the 2012-2013 Landmark Policy in the underlying Yellow Group lawsuit;

c. That this Court grant such other and further relief as it deems just and equitable.

## JURY DEMAND

Plaintiff demands the right to trial by jury on all issues so triable.

Dated this 19th day of March 2013.

Respectfully submitted,

/s/ Michael S. Knippen

One of the Attorneys for LANDMARK AMERICAN INSURANCE COMPANY

Michael S. Knippen
Attorney No. 6185723
Brian C. Bassett
Attorney No. 6285714
Jason M. Taylor
Attorney No. 6293925
TRAUB LIEBERMAN
STRAUS & SHREWSBERRY, LLP
303 W. Madison Street, Suite 1200
Chicago, Illinois 60603
312.332.3900
312.332.3908 (f)